IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JILL FORDYCE

     v.                     :   Civil Action No. DKC 13-0741

PRINCE GEORGE'S COUNTY MARYLAND

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion for summary judgment filed by Defendant Prince George's County, Maryland (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted in part and denied in part.

**I.   Background**[1]

This case involves a number of employment discrimination claims, including retaliation and hostile work environment, brought by Plaintiff Jill Fordyce ("Plaintiff" or "Ms. Fordyce") against her employer, the Prince George's County Police Department ("County Police Department"). Ms. Fordyce is employed as an Administrative Assistant and has worked with the

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

County Police Department since 2005.

**A.   Plaintiff's Previous Discrimination and Retaliation Claims**

In 2007, Ms. Fordyce, an African-American woman, who at that time held the title of Administrative Assistant II, applied for and was denied a promotion to an Administrative Assistant III position.   In October 2007, she complained to Police Chief Melvin High and the Police Department's EEO coordinator that she was experiencing discrimination based on race, sex, and national origin. On December 5, 2007, Ms. Fordyce filed a discrimination claim against the County Police Department through the U.S. Equal Employment Opportunity Commission ("EEOC").   On December 10, 2007, the County Police Department suspended Ms. Fordyce's supervisory duties.   On February 6, 2008, Ms. Fordyce then filed a second EEOC complaint alleging retaliation.   Two days later, she was informed by the County Police Department's Internal Affairs Division that she was under investigation for criminal misconduct and theft, allegations that the County Police Department received through an anonymous letter.   (ECF No. 1-3 ¶ 23).

About one year later, on March 10, 2009, Ms. Fordyce and the County Police Department reached a settlement through the EEOC.   As part of the settlement, Ms. Fordyce was promoted to the position of Administrative Assistant III, given the title of

Uniform Crime Reporting Director, and received a fifteen percent pay increase.

### B. Plaintiff's Current Retaliation and Hostile Work Environment Claims

In April 2010, Police Chief Roberto Hylton transferred Ms. Fordyce from the Records Management Division to the Police Department's Homeland Security Division Fusion Center. Ms. Fordyce was supposed to report to Lieutenant Devore, a member of Fusion Center management, and supervise Sergeant Hughes.

Ms. Fordyce alleges that prior to her arrival at the Fusion Center, management incited the staff against her by advising them that they should avoid her because she had filed prior EEOC complaints and was a "troublemaker." (ECF No. 13, at 3). She learned this from her coworker, Corporal Tanya Brooks ("Cpl. Brooks"). (ECF No. 13-1, at 2). Ms. Fordyce alleges that upon her arrival at the Fusion Center the staff and Lieutenant Devore refused to speak to her. (ECF No. 13-5, at 3). She also contends that she was not given a job title or job description in her new role, staff meetings were scheduled for days when she was out of the office, the staff was not informed that she was in their chain of command, and Sergeant Hughes continued reporting to Lieutenant Devore rather than to her. (Id.).

On June 30, 2010, Ms. Fordyce was allegedly involved in an incident with Cpl. Brooks, a police officer whom Ms. Fordyce

supervised.  Cpl. Brooks emailed Chief Hylton on July 2, 2010, stating that while she was assisting another coworker, Ms. Quanetta West, Ms. Fordyce stepped in between her and Ms. West and advised her to return to her desk and finish her work.  Cpl. Brooks noted that she ignored Ms. Fordyce and continued talking with Ms. West.  Cpl. Brooks reported that "Ms. Fordyce then grabbed [her] by the arm and tried to force [her] to [her] desk."  (ECF No. 13, at 3-4).

On July 1-2, 2010, Fusion Center management learned of the incident and began to investigate the matter.  (ECF No. 13-7, at 6-7).  At a meeting held on July 12, 2010, Lieutenant Devore informed Cpl. Brooks that the matter with Ms. Fordyce could be handled in several ways:  an EEOC complaint, an internal investigation with possible criminal charges, or through mediation.  (ECF No. 13-7, at 7).  Cpl. Brooks chose to pursue an internal investigation with possible criminal charges.  Chief Hylton interrupted this meeting, and after learning of Lieutenant Devore's plan to pursue an internal investigation against Ms. Fordyce, insisted that the matter be handled through mediation.  Chief Hylton then conducted a mediation between Cpl. Brooks and Ms. Fordyce.  Cpl. Brooks initially accused Ms. Fordyce of grabbing and pushing her, which Ms. Fordyce denied.  By the end of the mediation, "[Cpl.] Brooks agreed that it was

only a touch, however she [had] felt 'disrespected' by [Ms. Fordyce]." (ECF No. 13-7, at 6).

After hearing statements from Cpl. Brooks and Ms. Fordyce, Chief Hylton spoke privately with Cpl. Brooks. Cpl. Brooks informed him that she did not want to continue the mediation and instead wanted to continue the investigation. Chief Hylton told Cpl. Brooks to "let it go" and then told Cpl. Brooks, Ms. Fordyce, and Fusion Center management (including Lieutenant Devore) that the "matter was closed." (ECF No. 13-7, at 7-8).

On July 15, 2010, Plaintiff was subjected to a disciplinary action by Lieutenant Devore regarding her confrontation with Cpl. Brooks and received written counseling from him, instructing her "not to enter the Fusion Center or have any direct integration with any of its staff." (ECF No. 1-3 ¶ 43). In addition, on July 19, 2010, a formal investigation against Plaintiff was initiated and Lieutenant Meredith Bingley ("Lt. Bingley") was assigned as the investigator. (ECF No. 13-7, at 6).

On July 30, 2010, Plaintiff filed a complaint with the County Police Department's EEO coordinator alleging retaliation and hostile work environment. (ECF No. 13-5). She met with the

EEO Coordinator on August 3, 2010,[2] to discuss her complaint. The next day, Deputy Chief Magaw, who oversaw the Homeland Security Division, transferred Plaintiff to the Telephone Reporting Unit ("TRU"). Plaintiff alleges that at the time of her transfer the TRU had been non-operational since 2008. She also contends that her new office was in a "storage room containing broken furniture and equipment" and that she did not have a land-line telephone, desktop computer, or any staff to supervise. (ECF No. 13, at 4-5). The TRU became operational again in February 2011, but Plaintiff contends that from August 2010 until that time she had "nothing to do, no place to work, and no staff to supervise." (*Id.* at 5). On October 1, 2010, Plaintiff filed another EEO complaint. (*Id.*).[3]

Lt. Bingley, who was assigned to investigate the incident between Cpl. Brooks and Ms. Fordyce, interviewed "all pertinent Witnesses" between July 20, 2010 and August 24, 2010. (ECF No. 13-7, at 8). Ms. Fordyce, however, was not interviewed until December 22, 2010. (*Id.* at 8-9). Assistant State's Attorney, Joeday Newsom, screened the case on September 17, 2010. (ECF No. 13-7, at 8). On December 13, 2010, he issued a letter to

---

[2] Plaintiff either met with the EEO coordinator on August 2 or August 3, 2010. (*See* ECF No. 13-9, at 4, *and* ECF No. 13, at 4).

[3] Plaintiff either filed this EEO complaint on October 1 or October 4, 2010. (*See* ECF No. 13-9, at 5, *and* ECF No. 13, at 5).

Lt. Bingley, declining to prosecute Plaintiff for her actions
involving Cpl. Brooks. (ECF No. 13-3). His letter states that
there was not a reasonable chance of convicting Ms. Fordyce of
second degree assault "due to the brevity of the contact, level
of force used[,] and absence of injury." (Id.; ECF No. 13-7, at
10).

On December 14, 2010, Ms. Fordyce received initial notice
from the County Police Department that it had pursued criminal
prosecution against her for the June 30, 2010 incident involving
Cpl. Brooks, but that the State's Attorney of Prince George's
County had declined to pursue the charge. (ECF No. 13, at 5).
That same day, Ms. Fordyce also received notice that she was
under internal investigation by the County Police Department for
her actions on June 30, 2010. (ECF No. 13-9, at 7). Ms.
Fordyce was then interviewed by Lt. Bingley on December 22,
2010.

On March 25, 2011, Plaintiff received a Final Notice of
Disciplinary Action from Interim Chief of Police, Mark Magaw,
who formerly oversaw the Homeland Security Division and had
ordered her transfer to the TRU. The notice informed Plaintiff
that the County Police Department was taking disciplinary action
against her for three charges: (1) Unbecoming Conduct based on
second degree assault; (2) Making a False Statement to Major
McManus; and (3) Making a False Statement to Lt. Bingley. (ECF

7

No. 13-8, at 1-2).   As part of the disciplinary action, the County Police Department fined Plaintiff $1,600, which was subsequently reduced to $1,100, and was deducted from her paychecks at a rate of $50 per pay period.   (*Id.* at 2).

### C.   Procedural History

On April 7, 2011, Plaintiff filed Discrimination Charge No. 846-2011-48369 with the U.S. Equal Employment Opportunity Commission ("EEOC") against the County Police Department.   (ECF No. 1-3 ¶ 55).   On February 6, 2013, the EEOC issued Plaintiff a Notice of Right to Sue letter.   (ECF No. 13, at 8).

On March 11, 2013, Plaintiff filed a five count complaint against Defendant.[4]   The first three counts of Plaintiff's complaint allege "Retaliatory Hostile Work Environment" in violation of Title IX, Title VI, and Title VII.   Counts IV and V of the complaint allege "Retaliation" in violation of Title 20 of the State Government Articles of the Maryland Code and Prince George's County Code § 42(a) and §§ 2-186 and 2-222.   Plaintiff seeks a declaratory judgment and damages.

On September 27, 2013, Defendant filed a motion for summary judgment.   (ECF No. 12).   Plaintiff opposed the motion on October 11, 2013.   (ECF No. 13).   Defendant replied on October 25, 2013.   (ECF No. 14).

---

[4] Defendant's motion for summary judgment requests that counts I through VI be dismissed, but Plaintiff's complaint only contains five counts.

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex,* 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993)

(*quoting Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A. Title VI Claim (Count II)

Defendant argues that it is entitled to summary judgment on the Title VI claim because Plaintiff did not show that she was an intended beneficiary of federal funds received by the County government under the American Recovery and Reinvestment Act of 2009.

Section 601 of Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of "race, color, or national origin . . . under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute's definition of "Program or activity" includes "a department . . . or other instrumentality of a State or of a local government[.]" 42 U.S.C. § 2000d-4a(1)(A). Courts have interpreted Section 601 of Title VI as providing a private right of action to enforce claims of intentional discrimination and retaliation. *Peters v. Jenney,* 327 F.3d 307, 318-19 (4th Cir. 2003); *Alexander v. Sandoval,* 532 U.S. 275, 280-83 (2001).

Employment discrimination claims brought under this Act are limited by Section 604 of Title VI, which does not authorize suits against an employer unless the "primary objective of the Federal financial assistance [received by the employer] is to

11

provide employment." 42 U.S.C. § 2000d-3. The United States Court of Appeals for the Fourth Circuit treats Section 604 "as an element of a litigant's cause of action." *Rogers v. Bd. Of Educ. Of Prince George's Cnty.*, 859 F.Supp.2d 742, 748-49 (D.Md. 2012); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420-21 (4th Cir. 2005)(noting that plaintiff failed to allege facts in his complaint to show that defendant received federal funds or that "providing employment is a primary objective of the federal aid"). Accordingly, to survive a motion for summary judgment under Section 604 of Title VI, a litigant must provide facts to show that: (1) the employer received federal financial assistance for the primary purpose of providing employment, or (2) the employment discrimination was against a primary beneficiary of the federal financial assistance. *Trageser v. Libbie Rehab. Ctr.*, Inc., 590 F.2d 87, 89 (4th Cir. 1978), *overruled on other grounds by Consol. Rail Corp. v. Darrone,* 465 U.S. 624, 631-36 (1984); *see Reynolds v. School District No. 1, Denver, Colorado,* 69 F.3d 1523, 1531-32 (10th Cir. 1995) (affirming district court's grant of summary judgment for Defendants because Plaintiff failed to show how the federal grant Defendant received was "intended primarily to provide employment and not simply to fund various school programs or enrichment activities").

Plaintiff alleges that Defendant is a recipient of federal financial assistance, stating that "[t]he U.S. Department of Justice has provided the Prince George's County Police Department with millions of dollars under the American Recovery and Reinvestment Act of 2009." (ECF No. 1-3 ¶ 4).  She also maintains that "Prince George's County Police Department received stimulus funds for the [*express*] *purpose of creating jobs* and maintaining existing ones." (*Id.*) (emphasis added). Defendant argues that Plaintiff is not an *intended beneficiary* of federal funds received by the County government, and that Plaintiff's job is not funded by any federal monies received under ARRA. (ECF No. 12, at 11).  Defendant's arguments miss the mark.  Plaintiff does not allege that she is an intended beneficiary of the federal funds, and Title VI does not require a litigant to show that her job was directly funded by federal monies. *Trageser,* Inc., 590 F.2d at 89.

Judge Messitte's analysis in *Rogers v. Board of education of Prince George's County* is instructive.  859 F.Supp.2d at 752-54.  In that case*,* Judge Messitte denied the Defendant's motion for summary judgment because a genuine dispute existed as to whether Defendant's receipt of federal grants (under two funds of the American Recovery and Reinvestment Act ("ARRA")) was for the primary purpose of providing employment. *Id.*  Here too there is a genuine dispute of material fact about whether the

County Police Department received federal funds under the ARRA stimulus funds for the primary purpose of providing employment. *See Rogers,* 859 F.Supp.2d at 751 ("Having found that § 604's 'primary objective' requirement is a component of Plaintiffs' Title VI claims, it is for a jury, not the Court, to ultimately decide whether each Plaintiff has established this among other elements of their Title VI claims."). Accordingly, summary judgment will be denied as to the Title VI claim.

**B.   Title IX Claim (Count I)**

Plaintiff asserts retaliation claims under Title IX against Defendant. Defendant argues that the Title IX claim does not apply to it because it is not an educational institution and does not administer federal education programs or receive educational funding.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, prohibits discrimination on the basis of sex in "any *education* program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a) (emphasis added); *see also Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 635-36 (1984) (noting that the Supreme Court has construed Title IX's educational "program or activity" language as "limit[ing] the ban on discrimination to the specific program that receives federal funds"). The Fourth Circuit has held that "[a]n implied private right of action exists for enforcement of Title IX . . .

14

employment discrimination [claims] on the basis of gender by
*educational institutions* receiving federal funds." *Preston v.
Virginia ex rel. New River Cmty. Coll.,* 31 F.3d 203, 205-06 (4th
Cir. 1994) (emphasis added).  The statute defines "Educational
institution" as "any public or private . . . school, or any
institution of vocational, professional, or higher education."
20 U.S.C. § 1681(c).

Although the statute by its plain language applies to
recipients of federal funding, the recipient must also be an
"*education* program or activity."   20 U.S.C. § 1681(a).
Plaintiff cannot recover under Title IX as she has not provided
any evidence whatsoever that Defendant is a federally funded
*educational* institution.   Therefore, summary judgment will be
granted to Defendant on the Title IX claim.

   C.   **Title VII Claims (Count III)**

Defendant argues that Plaintiff cannot establish a *prima
facie* Title VII case for several reasons.  First, she cannot
show that Defendant took materially adverse employment actions
against her in order to establish retaliation.  Second, she
cannot show that Defendant's conduct was sufficiently severe and
pervasive to create a hostile work environment.

Title VII of the Civil Rights Act prohibits status-based
discrimination based on an employee's personal characteristics
such as "race, color, religion, sex, or national origin," 42

U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133
S.Ct. 2517, 2525 (2013).  It also prohibits retaliation by the
employer against employees who engage in a protected activity.
*Id.*  Protected activity includes opposing "unlawful employment
practice[s][under] this subchapter" or "ma[king] a charge,
testif[ying], assist[ing], or participat[ing] in . . . [a Title
VII] investigation, proceeding, or hearing[.]"   42 U.S.C.
§ 2000e-3(a).

To survive a motion for summary judgment, a plaintiff
making Title VII claims must provide evidence of intentional
discrimination, which includes acts of retaliation, through one
of two avenues of proof:  (1) direct or circumstantial evidence
that retaliation motivated the employer's adverse employment
decision, or (2) the *McDonnell Douglas* "pretext framework" that
requires a plaintiff to show that "employer's proffered
permissible reason for taking an adverse employment action is
actually a pretext for [retaliation]."  *Hill v. Lockheed Martin
Logistics Management, Inc.,* 354 F.3d 277, 284-85 (4th Cir. 2004)
(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, once the plaintiff
meets its initial burden of establishing a *prima facie* case for
retaliation, "the burden shifts to the employer to articulate a
legitimate, nondiscriminatory reason for the adverse employment
action." *Hill*, 354 F.3d at 285.  Once the employer meets this

16

burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotations omitted).

### 1. Retaliation

Under the first step of the *McDonnell Douglas* framework, Plaintiff must establish a *prima facie* case of retaliation under Title VII by showing that: (1) she engaged in a protected activity, (2) in response, her employer acted adversely against her, and (3) the protected activity was causally connected to the adverse action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Unlike for discrimination claims, a plaintiff need not establish an "ultimate employment decision" to make a *prima facie* case of retaliation. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d

371, 375-76 (4th Cir. 2004).   Rather, she must show a *materially adverse* employment action, meaning that the "employer's actions must be harmful to the point that they could well dissuade a *reasonable* worker from making or supporting a charge of discrimination."   *Burlington,* 548 U.S. at 57, 67-68 (emphasis added) (describing this determination as an objective standard from the viewpoint of a reasonable employee).   "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits' of the plaintiff's employment."   *James,* 368 F.3d at 375 (internal quotations omitted).

> [T]he mere fact that a new job assignment is less appealing to the employee, however, does not constitute an adverse employment action.   A reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.   Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action[.]

*Id.* at 376 (internal quotation and citation marks omitted).

### a.   Materially Adverse Employment Actions

Defendant contends that Plaintiff has not met her burden under the *McDonnell Douglas* framework, because she has not shown that the County Police Department took adverse employment action

against her.[5]   Plaintiff counters that Defendant took several materially adverse employment action against her, including: (1) transferring her to the TRU, and (2) instituting a criminal prosecution and disciplinary action against her which resulted in a fine of $1,100.

### i. Transfer to the TRU

Although a transfer to "a new job assignment [that] is subjectively less appealing to the employee is not [by itself] a 'materially adverse' employment action[,]" *James,* 368 F.3d at 375, courts have found that a new job assignment with reduced supervisory duties or diminished responsibility can constitute an adverse employment action. *See Czekalski v. Peters,* 475 F.3d 360, 364 (D.C. Cir. 2007) (noting that a lateral transfer can constitute an adverse employment action if it results in the withdrawal of an employee's "supervisory duties" or "reassignment with significantly different responsibilities" (internal quotations and citations omitted)); *Kessler v. Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199, 206-07 (2$^{d}$ Cir. 2006) (stating that a transfer is an adverse employment action if it causes a "radical change in nature of the [plaintiff's] work" (internal quotations and citations omitted)).

---

[5] Defendant has not challenged Plaintiff's establishment of the first (engaging in a protected activity) or third (causation) elements of retaliation.

Defendant argues that Plaintiff's transfer was not an adverse employment action because she maintained the same title and supervisory duties in the TRU. (ECF No. 12, at 20-21). Defendant admits that the TRU was undergoing renovations when Plaintiff arrived, but states that just because "Plaintiff may not have liked her new job assignment or initial work environment [this] is not a basis for maintaining a retaliatory adverse employment action[.]" (*Id.* at 21).

Plaintiff counters that her transfer was an adverse employment action, because the TRU "had been non-operational since 2008" and she had "nothing to do, no place to work, and no staff to supervise" from August 2010 until January 2011. (ECF No. 13-1, at 3). She provided evidence showing that her transfer resulted in withdrawal of her supervisory duties for at least a period of time, and a change in the nature and amount of work she was given. (*Id.*). Plaintiff has provided sufficient evidence to create a material dispute of fact with regard to whether her transfer to the TRU was an adverse employment action.

## ii. Disciplinary Action

Plaintiff alleges that the criminal charges and internal investigation arising from the June 30, 2010 incident with Cpl. Brooks that resulted in a formal disciplinary action and fine of $1,100 constituted an adverse employment action. Defendant

maintains that it was not the County Police Department that instituted the criminal charges, but Cpl. Brooks. (ECF No. 14, at 8-9). Defendant also states that Plaintiff "did not suffer any economic loss." (ECF No. 12, at 22).

Defendant's arguments are unavailing. Plaintiff's evidence shows that the fine resulting from her disciplinary action was deducted directly from her paychecks. (ECF No. 13-1, at 4). Because the fine reduced Plaintiff's compensation, it can be considered an adverse employment action. *Cf. James,* 368 F.3d at 376 *(*"[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action[.]" (internal quotations omitted)). Furthermore, courts have noted that "malicious prosecution can constitute [an] adverse employment action." *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir. 1996); *Beckham v. Grand Affair, Inc.,* 671 F.Supp. 415, 419 (W.D.N.C. 1987). The pursuit of criminal charges and internal investigations of Plaintiff, when the allegations were largely unsupported as discussed *infra,* may also constitute an adverse employment action, whether these charges were instigated on behalf of the Police Department or Cpl. Brooks.

At minimum, there is a genuine dispute of fact as to whether these actions were materially adverse employment

actions, such that they would dissuade a reasonable employee from filing an EEO complaint. *Burlington,* 548 U.S. at 68. For both her transfer to the TRU and the disciplinary action instituted against her by Defendant, Plaintiff has met her burden of showing a *prima facie* case of retaliation.

**b.   Legitimate, Nondiscriminatory Reasons & Pretext**

Defendant argues that it proffered legitimate, non-retaliatory reasons for the alleged adverse employment actions it took against Plaintiff. First, the County Police Department maintained that it transferred Ms. Fordyce to the TRU because "the altercation she engaged in [with Cpl. Brooks] had affected the Plaintiff's ability to work in the Fusion Center with the employee she had assaulted, as well as with others." (ECF No. 12-2 ¶ 10). Second, the County Police Department stated that it had instituted an internal investigation against Plaintiff and fined her "in accordance with the police department's written policy for [internal] complaints and in accordance with the complaining employee's desires." (ECF No. 12, at 20). Under the *McDonnell Douglas* framework, once the Defendant offers legitimate, nondiscriminatory reasons for its actions, the burden shifts back to Plaintiff to show "by a preponderance of the evidence that the employer's reason is false and that [retaliation] was the real reason for the decision." *Thomas v. Autumn Woods Residential Health Care Facility,* 905 F.Supp. 414,

420 (E.D. Mich. 1995) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993)).

Defendant next argues that Plaintiff has not met her ultimate burden under the *McDonnell Douglas* framework of showing by a preponderance of the evidence that Defendant's nondiscriminatory reasons for its actions were only a pretext for its retaliatory motives. Plaintiff contends that Defendant's reliance on the June 30, 2010 incident with Cpl. Brooks as a reason for her transfer and disciplinary action is a pretext, which is evident from the Department's own investigation of the incident. (ECF No. 13, at 20). "A plaintiff may demonstrate pretext by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'". *Pastran v. K-Mart Corp.,* 210 F.3d 1201, 1206 (10th Cir. 2000) (internal quotations and citations omitted)).

Plaintiff has provided detailed information on the sequence of events surrounding her transfer and disciplinary action that provide insight into Defendant's tacit motives. Plaintiff has alleged that from her first day at the Fusion Center, management "incited the staff against her" and avoided her because of her prior EEOC complaint. (ECF No. 13, at 3). Cpl. Brooks told

23

Plaintiff that Captain Patel had "told the Fusion Center's staff that [she] had filed prior EEO complaints and [] described [her] has a troublemaker." (ECF No. 13-1 ¶ 11). Only several months after her arrival, after a single disagreement with a coworker involving allegations of assault that were dispelled after a preliminary investigation,[6] management transferred Plaintiff to a new unit. Plaintiff was transferred by management, who had labeled her as a "troublemaker" and had avoided her since she began working at the Fusion Center. She was transferred despite the Chief's instructions to drop the matter (ECF No. 13-7, at 7-9), and merely five days after Plaintiff filed an EEO complaint. (ECF No. 13, at 4; ECF No. 13-5). Based on this evidence, a reasonable jury could find by a preponderance of the evidence that Defendant's articulated reasons were a pretext for management's real motive for her transfer, retaliation.

As for the internal investigation of Plaintiff, this is not the first instance in which Defendant has launched an internal investigation against Plaintiff following Plaintiff's

---

[6] On July, 12, 2010, after a mediation session between Plaintiff and the aggrieved coworker, the coworker admitted that Plaintiff had not grabbed her by the arm, but that "it was only a touch, however she felt 'disrespected' by [Plaintiff]." (ECF No. 13-7, at 7-9). The only eyewitness to the disagreement stated on July 21, 2010, that Plaintiff had merely "placed a hand on Ms. Brooks's arm" in an effort to get her to return to her desk and that "[i]t was not a forceful grab." (ECF No. 13-4, at 1-2).

filing of an EEOC complaint.[7]   (ECF No. 1-3 ¶ 23).   During the most recent investigation, Lt. Bingley interviewed "all pertinent Witnesses" but did not bother to take Plaintiff's statement until after she had already submitted her report to the Assistant State's Attorney.   (ECF No. 13-7, at 8).   After reviewing Lt. Bingley's report, the Assistant State's Attorney found that there was not a reasonable chance of convicting Plaintiff of second degree assault "due to the brevity of the contact, level of force used[,] and absence of injury."   (Id.; ECF No. 13-7, at 10).   But upon receiving this determination, the County Police Department still decided to pursue a disciplinary action against Ms. Fordyce (ECF No. 13-9, at 7), a decision that was made shortly after she had filed her second EEO complaint.   (ECF No. 13, at 4-5); see Pastran, 210 F.3d at 1206 (noting that "[c]lose temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation.").

Plaintiff's strongest evidence that Defendant's reasons are pretextual is the report filed by Lt. Bingley regarding her investigation of Plaintiff.   (ECF No. 13-7).   Lt. Bingley's

---

[7] In February 2008, the County Police Department launched an internal investigation against Plaintiff, based on allegations of "criminal misconduct" from an anonymous letter, shortly after Plaintiff had filed an EEOC Charge of Discrimination on December 5, 2007.   (ECF No. 1-3 ¶¶ 20, 23).

findings are at best contradictory, and at worst evidence of the County Police Department's ill-will towards Plaintiff. For example, Plaintiff was fined $1,000 for unbecoming conduct based on second degree assault, when both Lt. Bingley and the Assistant State's Attorney had found that Plaintiff had not committed second degree assault.[8] (ECF No. 13-7, at 10; ECF No. 13-3). Even if Defendant was acting in accordance with its internal policy in pursuing the internal investigation against Plaintiff, Defendant could not genuinely believe that it was justified in fining Plaintiff based on allegations that were unsupported by the investigator's own report. *See Pastran,* 210 F.3d at 1206 (noting that in determining pretext, a court must consider "not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual" (internal quotations omitted)).

A reasonable jury could find by a preponderance of the evidence that Defendant's true motivation for instituting the internal investigation, disciplinary action, and fine against

---

[8] Lt. Bingley sustained charge #2 against Plaintiff for Unbecoming Conduct for second degree assault, while at the same time finding that charge #1 for second degree assault was unfounded—both second degree assault charges were based on the same evidentiary standard, preponderance of evidence. (ECF No. 13-7, at 10). Furthermore, Plaintiff was charged twice for what was in essence the same "false" statement, in which she alleged that she had not aggressively grabbed Cpl. Brooks, a statement that was verified by the only witness to the event, Quanetta West. (*Id.;* ECF No. 13-4, at 1-2).

Plaintiff was to retaliate against Plaintiff for filing EEO complaints and for being a "troublemaker," rather than to act in accordance with its internal policy and Cpl. Brooks's wishes. Plaintiff has met her burden under the *McDonnell Douglas* framework of showing by a preponderance of the evidence that Defendant's proffered reasons for its actions were a pretext for retaliation.   Thus, Defendant is not entitled to summary judgment on Plaintiff's Title VII retaliation claims.

### 2.   **Retaliatory Hostile Work Environment**

Defendant argues that Plaintiff has not met her burden of establishing a *prima facie* case of retaliatory hostile work environment, because the incidents of retaliation alleged in her complaint are not severe or pervasive as to alter the conditions of her employment and create an abusive atmosphere.[9]

Retaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment. *Von Gunten v. Maryland,* 243 F.3d 858, 869 (4th Cir. 2001) ("Retaliatory harassment can constitute adverse employment action."), *overruled on other grounds by Burlington,* 548 U.S. at 67-68.   To survive summary judgment, Plaintiff must show a *prima facie* case for retaliation, including evidence that her employer's adverse actions amount to a hostile work

---

[9]   In Defendant's motion for summary judgment, it mischaracterizes Plaintiff's claim as hostile work environment based on sex and race discrimination.   (ECF No. 12, at 25-26).

environment.[10]   *Thorn v. Sebelius,* 766 F.Supp.2d 585, 600 (D.Md. 2011).   The Supreme Court's decision in *Burlington Northern* suggests that a plaintiff can establish retaliation under this theory as long as the employer's creation of a hostile work environment amounts to a *materially adverse* employment action. 548 U.S. at 68.   Materiality is an objective determination, meaning that "[a]cts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities[] will not suffice." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.,* 595 F.3d 1126, 1133 (10th Cir. 2010) (internal quotations omitted).

A hostile work environment under Title VII, requires a plaintiff to show that the harassment was "sufficiently severe or pervasive to alter the conditions of [] employment and [] create an abusive atmosphere[.]" *Baqir v. Principi,* 434 F.3d 733, 745-46 (4th Cir. 2006).   The "standard for proving an

---

[10] If the adverse employment action is creation of a *hostile work environment*, the plaintiff must also show enough evidence that "a reasonable jury [could] conclude that the harassment was (1) unwelcome, (2) based on [a protected activity], (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the employer]." *E.E.O.C. v. Cent. Wholesalers,* Inc., 573 F.3d 167, 174-75; *see also Thorn,* 766 F.Supp.2d at 600-01 (applying the hostile work environment factors to a claim of retaliatory hostile work environment).

abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'" *Wang v. Metro. Life Ins. Co.,* 334 F.Supp.2d 853, 864 (D.Md. 2004). "Courts usually only allow hostile work environment claims to proceed where the [harassment] is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance." *Tawwaab v. Va. Linen Serv., Inc.,* 729 F.Supp.2d 757, 777 (D.Md. 2010).

In Plaintiff's opposition to Defendant's motion for summary judgment, she alleges that her employer took several actions in response to her filing internal EEO complaints that support her retaliatory hostile work environment claim, including: (1) on August 4, 2010, Deputy Chief Magaw transferred her to the TRU after she had made an EEO complaint on July 30, 2010 (ECF No. 13, at 16-17); (2) on December 14, 2010, the County Police Department notified her, that it had pursued a criminal prosecution against her and that it would pursue an internal investigation against her after she made an EEO complaint on October 1, 2010 (ECF No. 1-3 ¶¶ 47, 50, 52); (3) on March 25, 2011, the County Police Department notified her that it was fining her $1,600 as a part of the disciplinary action against her for the incident involving Cpl. Brooks (ECF No. 13, at 17-18).

Although these incidents may constitute materially adverse employment actions, supporting individual claims of retaliation, under the totality of circumstances they are not "sufficiently severe or pervasive" to create a hostile work environment. *Baqir,* 434 F.3d at 745-46.   The incidents cited by Plaintiff occurred months apart, thus, failing to show a pattern of constant retaliation by Defendant.   *Tawwaab,* 729 F.Supp.2d at 777.   In addition, none of Defendant's direct acts (the transfer and disciplinary action) or the consequences of these actions (working in a less appealing division and paying a fine) involved violence or threats towards Plaintiff or created an abusive environment; instead, they were standard, managerial acts (transferring and disciplining an employee), which were exercised in a civil manner and facially supported by nondiscriminatory reasons.   Plaintiff has not met her burden of showing a *prima facie* case of retaliatory hostile work environment, and thus, Defendant is entitled to summary judgment on this claim.

**D.   State Law Claims (Counts IV and V)**

Defendant argues that Plaintiff's retaliation claims under state law (counts IV and V) are barred because of her failure to comply with Maryland's Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-304.

Section 503(b) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Cts. & Proc. § 5-304(b). Notice is required to be given in writing, delivered in person or by certified mail, and must state the "time, place, and cause of the injury." *Id.* § 5-304(b)-(c). For claims against Prince George's County, the notice must be "given to the county solicitor or county attorney." *Id.* § 5-304(c).

"[T]he LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must . . . satisfy the notice requirement strictly or substantially, [and must] also plead such satisfaction [of the notice requirement] in his/her complaint." *Hansen v. City of Laurel,* 420 Md. 670, 694 (2011). The purpose of the notice requirement is to "furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and extent of the [plaintiff's] injury and [the municipality's] responsibility in connection with it[.]" *Grubbs v. Prince George's County,* 267 Md. 318, 321 (1972). In instances where a plaintiff has not strictly complied with the notice requirement, but where the purpose of the notice provision is nonetheless satisfied, Maryland courts

31

have found that substantial compliance is sufficient to satisfy the statute. *Faulk v. Ewing,* 371 Md. 284, 299 (2002); *Williams v. Maynard*, 359 Md. 379, 390 (2000).

Substantial compliance requires "some effort [by the plaintiff] to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Moore v. Norouzi,* 371 Md. 154, 171 (2002). Additionally, substantial compliance requires that "the relationship between the person or entity in fact notified and the person or entity that the statute requires be notified was so close . . . that notice to one effectively constituted notice to the other[,]" *Ransom v. Leopold*, 183 Md.App. 570, 584 (2008), thereby providing "the unit or division with the responsibility for investigating tort claims against that local government . . . actual knowledge [of the information required by § 5-304(b)(2)] within the statutory period[.]" *Moore,* 371 Md. at 154.

Here, Plaintiff failed strictly or substantially to comply with the notice requirement of § 5-304, by failing to take any affirmative steps to notify Prince George's County Attorney of her claims within 180 days of the occurrences from which her claims arose. Md. Code. Ann., Cts. & Jud. Proc. § 5-304(b)-(c). Defendant provided an Affidavit of Kristine R. Beck, an administrative aid in the Office of the Prince George's County

Attorney, who affirmed that she checked the office records and that Plaintiff had not provided the County with any notice of her claims.  (ECF No. 12-4).  Additionally, the complaint does not mention any actions taken by Plaintiff to notify the County Attorney of the time, place, or cause of her injury.

If a plaintiff fails substantially to comply with the notice requirement, such as here, a court may still hear the suit "upon motion and for good cause shown[,]" "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice[.]"  Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).  A plaintiff demonstrates good cause by showing that she has prosecuted her claim with the "degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Moore,* 371 Md. at 169 (quoting *Heron v. Strader,* 361 Md. 258, 271 (2000)).  Plaintiff has not demonstrated good cause in this case.

Plaintiff has provided no evidence to counter Defendant's argument that she had failed to give proper notice, nor did she show evidence of good cause for failing to substantially comply with § 5-304's requirements.  Because Plaintiff has not complied

with § 5-304 of the LGTCA, Defendant is entitled to judgment as a matter of law on counts IV and V. [11]

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted in part and denied in part.   Summary judgment will be granted for Defendant on all of the claims, except Plaintiff's claims for retaliation under Title VI and Title VII.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[11] Defendant also contends that Plaintiff's state law claims are barred because they were not filed within the two year statute of limitations provided by Title 20 of the Maryland Code's State Government Article § 20-1202(c), and because Plaintiff failed to exhaust administrative remedies for these particular claims by cross-filing her EEOC claim with the Prince George's County Human Relations Commission.   (ECF No. 12, at 14).   The merits of these additional arguments will not be reached considering that the state law claims are barred by Plaintiff's failure to satisfy § 5-304 of the LGTCA.