IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JILL FORDYCE                          :

                               :

   v.                                 :   Civil Action No. DKC 13-0741

                               :

PRINCE GEORGE'S COUNTY, MARYLAND      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion for attorney's fees filed by Plaintiff Jill Fordyce ("Plaintiff"). (ECF No. 49). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I. Background**

Plaintiff's original complaint brought claims alleging five counts of retaliation under Title VI; Title VII; Title IX; Title 20 of the State Government Articles of the Maryland Code; and Sections 42(a), 2-186, and 2-222 of the Prince George's County Code against Defendant Prince George's County, Maryland ("Defendant"). (ECF No. 1). The complaint sought declaratory judgment and $1,000,000.00 in compensatory and punitive damages. (*Id.* at 9). Plaintiff alleged that Defendant retaliated against

her and created a retaliatory hostile work environment when it disciplined her and transferred her to a different unit.

Following discovery, Defendant moved for summary judgment. (ECF No. 12). Plaintiff filed a response in opposition (ECF No. 13), and Defendant replied (ECF No. 14). On August 25, 2014, the undersigned granted in part and denied in part Defendant's motion, entering judgment for Defendant on three counts. (ECF Nos. 15; 16). Plaintiff's retaliation claims under Title VII and Title VI survived summary judgment. On May 15, 2015, following three days of testimony, a jury found that Defendant retaliated against Plaintiff by transferring her to a different unit and awarded her $2,000 in compensatory damages. (ECF No. 43). On May 29, 2015, Plaintiff filed the pending motion for attorney's fees, requesting $269,250.00. (ECF No. 49). Defendant filed a response in opposition (ECF No. 52), and Plaintiff replied (ECF No. 53).

**II.  Analysis**

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." "The purpose of [Section] 1988 is to ensure effective access to the judicial process" for persons with civil rights grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted). "Congress enacted [Section] 1988 specifically because it found

2

that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (citations omitted). Congress attributed this market failure in part to the fact that "[t]hese victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *Id.* (citations omitted). "The first determination to be made by the district court is whether the plaintiff is a prevailing party. The second determination is whether an award of attorney's fees should be granted to the prevailing party and what amount would be reasonable under the specific circumstances of the case." *Feldman v. Pro Football, Inc.*, 806 F.Supp.2d 845, 847 (D.Md. 2011). Here, Defendant does not dispute that Plaintiff was the prevailing party and is entitled to at least some attorney's fees.[1]

"The proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th

---

[1] Defendant does argue that Plaintiff should be denied all requested attorney's fees because Plaintiff's counsel did not provide opposing counsel quarterly statements showing the amount of time spent on the case and the total value of the time as required by the Local Rules. Local Rules App'x B, at 1(c). However, the Local Rules also state that "[o]pposing counsel may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided." *Id.* n.3. Although Defendant briefly asserts that "the statements were requested in writing," (ECF No. 52, at 4), it provides no support for this assertion.

3

Cir. 2013). The United States Court of Appeals for the Fourth Circuit has outlined the three steps:

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

*McAfee*, 738 F.3d at 88. The *Johnson* factors, as characterized by the Fourth Circuit are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional

relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.* at 88 n.5.

### A. Lodestar Figure

### 1. Hourly Rate

Plaintiff bears the burden of establishing the reasonableness of the hourly rate. *Id.* at 91 (citing *Plyler v. Evatt*, 902 F.2d 272, 277 (4th Cir. 1990)). "A fee applicant is obliged to show that the requested hourly rates are consistent with the 'prevailing market rates in the relevant community for the type of work for which she seeks an award.'" *Id.* (quoting *Plyler*, 902 F.2d at 277). "'In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award,' including, for example, 'affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'" *Corral v. Montgomery Cnty.*, 91 F.Supp.3d 702, 713 (D.Md. 2015) (quoting *Robinson*, 560 F.3d at 244).

Here, Plaintiff submits an affidavit from her attorney, Bryan Chapman, in support of his requested rate of $300 per hour. (ECF No. 49-2). Mr. Chapman represents that his usual hourly rate is $300 and that he has been practicing law for twenty-two years. (*Id.* ¶¶ 7-8). Plaintiff argues that the

5

requested rate is reasonable because it is at the low end of the court's guidelines regarding hourly rates. *See* Local Rules App'x B, at 3(e).[2] Defendant counters that the requested rate is too high in light of Mr. Chapman's history of sanctions and violations. (ECF No. 52, at 10-11). Additionally, Defendant notes that Plaintiff has not provided "any specific, independent evidence of the prevailing market rates to substantiate his claimed hourly rate," such as affidavits from other lawyers. (*Id.* at 10). Defendant contends that an hourly rate of $150 would be more appropriate in light of his history of sanctions, "as well as his questionable billing practices demonstrated in the instant matter." (*Id.* at 11).

Although the guidelines set forth in the Local Rules provide "practical guidance" regarding the reasonableness of fees, "[t]he factors established by case law obviously govern over them" and "the [c]ourt expects all claims to be appropriately supported." Local Rules App'x B, at n.6; *see Corral*, 91 F.Supp.3d at 712-16; *Blake v. Baltimore Cnty.*, 12 F.Supp.3d 771, 775 (D.Md. 2012) ("The Local Rule is a guideline rather than a mandatory range."); *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 6410846, at *3 (D.Md. Dec. 6, 2013) (reducing the proposed hourly rate because the plaintiff provided no

---

[2] The guidelines provide that lawyers admitted to the bar for twenty (20) or more years have an hourly rate between $300 and $475.

6

supporting documentation). Accordingly, notwithstanding the guidelines, a "fee applicant is obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which she seeks an award.'" *McAfee*, 738 F.3d at 91 (quoting *Plyler*, 902 F.2d at 277). Here, Plaintiff has provided no evidence beyond Mr. Chapman's affidavit that the requested hourly rate is reasonable and consistent with the prevailing market rates for similar work. In addition, much of the work included in the fee request, such as extensive legal research, preparation of discovery requests, and reviewing documents, is work that could be done by someone with far less legal experience. Therefore, Mr. Chapman's hourly rate will be reduced to $225.[3]

### 2. Hours Worked

"The fee applicant must also establish the reasonable expenditure of time in pursuing the case. This stage of the lodestar calculation requires the court to exclude from its initial fee calculation hours that were not reasonably

---

[3] Defendant requests an hourly rate of $150 because it is the "lowest compensable rate" in the guidelines. (ECF No. 52, at 10-11). However, this ignores the fact that Mr. Chapman has been admitted to the bar for over twenty (20) years. As such, it would not be appropriate to use the lowest suggested hourly rate for lawyers admitted to the bar for less than five (5) years. Absent additional supporting documentation, $225 is an appropriate compromise between the parties' requested rates.

expended." *Corral*, 91 F.Supp.3d at 716 (citations and internal quotation marks omitted). Plaintiff's attorney provides itemized time records that list the date of the work, the time spent, and a brief description of the work performed. (ECF No. 49-3). Mr. Chapman asserts that the time spent is reasonable because Plaintiff obtained an "exceptional result" and because Defendant vigorously opposed "virtually every stage of the proceeding." (ECF No. 49-1, at 4-6). Mr. Chapman also contends that he has "eliminated hundreds of hours in the exercise of billing judgment." (*Id.* at 3). Defendant counters that Plaintiff's fee request is "wildly disproportionate to the work necessary to prosecute such a case," particularly because it is approximately 134 times greater than the amount of the judgment awarded. (ECF No. 52, at 7). Defendant also argues that the billing entries are unacceptably vague. Defendant generally does not highlight specific entries, but instead challenges Plaintiff's excessive billing and the vagueness of the billing statements as a whole.

As an initial matter, Defendant argues that Plaintiff's fee recovery should be reduced because the billing statement is not separated by litigation phase as required by the Local Rules. *See* Local Rules App'x B, at 1(b). Although Plaintiff did not submit billing records with headings categorizing the entries, the entries are arranged chronologically and contain sufficient

information to organize them into rough categories. (ECF No. 49-3). The entries will be grouped as follows: entries from February 2 through March 13, 2013 will be discussed under "case development and pleadings"; entries from April 14 through July 18, 2013 will be discussed under "discovery"; entries from July 20, 2013 through July 30, 2014 will be discussed under "motions practice"; entries from August 25, 2014 through May 11, 2015 will be discussed under "settlement conference and trial preparation"; entries from May 12 through May 14, 2015 will be discussed under "trial"; and entries from May 18 through May 29, 2015 will be discussed under "fee petition preparation."

    **a.   Case Development and Pleadings**

Plaintiff's counsel seeks fees for 58.5 hours during this stage, which included legal research, meetings with Ms. Fordyce, reviewing documents, and drafting the complaint. Defendant notes that Mr. Chapman's practice has focused on employment discrimination law for approximately 22 years. (ECF No. 52, at 11). Defendant's insinuation is that, given his extensive experience, Mr. Chapman should be able to complete tasks more efficiently than a less experienced lawyer. However, in light of the multiple counts in the complaint and the fact-intensive nature of employment discrimination cases, Mr. Chapman's request of 58.5 hours appears reasonable and will be credited.

**b.   Discovery**

Plaintiff requests 142 hours for Mr. Chapman's work on discovery.  This work included "preparing discovery requests," "legal research," "reviewing documents," "preparing outline," and "responding to discovery requests."  Defendant argues that this figure is unreasonable because Plaintiff did not take any depositions and only "engaged in minimal written discovery." (ECF No. 52, at 7).  Defendant also alleges at least four instances during this period when Mr. Chapman billed substantial time in this case and in *Everhart v. Board of Education of Prince George's County*, PJM-11-1196, another employment discrimination case on the same day.  (*Id.* at 8).  For each of the four dates in question, Plaintiff requests between 16 and 18.5 hours in billed time between the two cases.  Plaintiff does not dispute the allegation of double-billing or respond to it in any way in her reply.  Although working such hours may be reasonable, particularly when approaching key deadlines in one or more cases, the dates of alleged double-billing were more than two months before the close of discovery and no discovery deadlines were looming.  In light of the limited nature of discovery that occurred in this case and the unrefuted allegations of double-billing, 142 hours is not a reasonable amount for which to seek reimbursement.  Accordingly, Mr.

Chapman will be credited with 71 hours, a fifty percent reduction in time requested.

### c. Motions Practice

Plaintiff requests 214.75 hours for this portion of litigation. Defendant contends that this is unreasonable because Defendant filed only one dispositive motion and Plaintiff filed none. A close review of the entries for this period reveals that the request is unreasonable. Plaintiff filed a status report on August 19, 2013 indicating that she did not intend to file a motion for summary judgment, but the billing statement contains multiple subsequent entries purportedly for "preparation for summary judgment." In all, Plaintiff seeks fees for 104 hours of motions practice time after the decision not to file summary judgment was communicated but before Defendant filed its summary judgment motion. Some preparation in advance of Defendant's filing of its summary judgment motion was warranted. However, the time requested is not reasonable when added to the 51 hours requested for preparation of Plaintiff's response to Defendant's summary judgment motion. Plaintiff asserts that the time is reasonable given Defendant's determined opposition at every stage of the litigation, but she does not explain what makes this case different than any other contested employment discrimination case. In fact, much of what Plaintiff points to as particularly

11

aggressive defense tactics would not require significant additional attorney time for a response. Accordingly, Mr. Chapman will be granted 107 hours for motions practice, approximately a fifty percent reduction.

**d.    Settlement Conference and Trial Preparation**

Plaintiff requests 419.25 hours for work on the settlement conference and trial preparation. This request includes 70 hours for work in advance of the November 24, 2014 settlement conference and 349.25 hours in preparation for trial. Plaintiff contends this is reasonable partly because Defendant "refused to cooperate" in the preparation of a proposed joint pretrial order and postponed the trial date. Plaintiff contends that "[i]n reaction to the Defendant's cavalier behavior, Plaintiff's counsel revved up his trial preparation to anticipate any contingency, right up to the start of the trial." (ECF No. 53, at 8). The trial was initially scheduled to begin on March 24, 2015, but, on March 18, 2015, Defendant moved for a continuance. (ECF No. 30). Trial ultimately began on May 12, 2015. As of March 18, 2015, expecting trial to be a week away, Mr. Chapman had spent 197.5 hours on trial preparation following the settlement conference. After receiving the motion for a continuance, Mr. Chapman spent an additional 151.75 hours preparing for trial. The amount of time spent on trial preparation following the motion for continuance is not

12

reasonable and is largely duplicative of earlier trial preparation entries. Accordingly, the post-continuance time will be reduced by fifty percent, and Mr. Chapman will be awarded 343.5 hours total for settlement and trial preparation.

### e. Trial

Mr. Chapman represents that he spent 39 hours working on Plaintiff's case during the three days of trial. This time includes preparation for the following trial day. Mr. Chapman's request appears reasonable and will be credited.

### f. Fee Petition Preparation

Finally, Mr. Chapman requests 24 hours for researching and preparing the fee petition. Defendant argues that this is an unreasonable amount of time, particularly because the fee petition is very similar to Mr. Chapman's earlier fee petition in *Everhart*. (ECF No. 52, at 8-9). Defendant's objections are persuasive. This court has noted that a reduction in hours is appropriate when "much of the [fee petition] argument was similar to arguments made in any sort of fee petition." *Corral*, 91 F.Supp.3d at 718. This is particularly true here because Mr. Chapman filed a very similar fee petition that cited the same legal precedent one year earlier. Accordingly, Mr. Chapman's request will be reduced by half to 12 hours.

### g.  Total Hours Reasonably Worked

In sum, Mr. Chapman is credited with 631 hours.  At his revised hourly billing rate of $225, this leads to an initial lodestar figure of $141,975.00.

### 3.  Additional *Johnson* Factors

Many of the *Johnson* factors were subsumed in the preceding rate and hour analysis and it is not necessary to consider them again.  *Corral*, 91 F.Supp.3d at 718 (citing *McAfee*, 738 F.3d at 89).  The other factors point toward a small downward adjustment in the lodestar figure.

This case was a relatively straightforward retaliation case.  Particularly for an attorney with over twenty years of employment law experience, this case would not have presented many unique challenges or precluded the attorney from taking other cases.  In fact, as Defendant notes, Mr. Chapman was involved in at least two other cases during the course of this litigation.  (ECF No. 52, at 12).  The court's CM/ECF system reveals several more.  Plaintiff offers no evidence that any remaining *Johnson* factor counsels against a reduction.  Accordingly, the additional *Johnson* factors counsel in favor of a lodestar reduction of two (2) percent, bringing the figure to $139,135.50.

14

B.  **Unsuccessful Claims**

"After determining that the hours expended and the attendant rates requested by a lawyer for a prevailing party are reasonable, a court is obliged to subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 91 (quotation marks and citation omitted). A claim is unrelated if it is "distinct in all respects from his successful claims. . . . Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440.  A claim is distinctly different if it is "based on different facts and legal theories." *Id.* at 434.  Here, Plaintiff brought five counts, all of which arose out of the same set of facts.  Defendant does not argue for a reduction due to unsuccessful claims, and, as such, no reduction is warranted.

C.  **Extent of Success**

> In the final step before making an attorney's fee award under [Section] 1988, a district court must "consider the relationship between the extent of success and the amount of the fee award."  The court will reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." . . . What the court must ask is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."

15

*McAfee*, 738 F.3d at 92 (quoting *Hensley*, 461 U.S. at 439-40, 434). "When considering the extent of the relief obtained, we must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). "If a [Section] 1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive." *McAfee*, 738 F.3d at 93 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Plaintiff argues that no reduction in fees is appropriate because she obtained an "exceptional result." (ECF No. 49-1, at 5-7). Plaintiff contends that she was successful in her "sole claim" of retaliation. She also argues that her success should not be measured against her complaint because, although she sought $1,000,000 in damages in the complaint, she did not ask the jury for a specific amount at trial. (ECF No. 53, at 5). Finally, Plaintiff asserts that the her success is bolstered because the judgment serves the public interest by "holding high level[] police department officials accountable for retaliatory practices." (*Id.* at 8). Defendant counters that the requested award, which is approximately 134 times the amount of the judgment, is excessive, especially in light of the amount recovered compared with the relief sought in the complaint. (ECF No. 52, at 7).

16

The facts in *McAfee* are very similar to those in here. The plaintiff in *McAfee* sought $500,000 in compensatory and punitive damages, but was awarded only $2,943.60 in compensatory damages. *McAfee*, 738 F.3d at 93. The district court initially awarded attorney's fees of almost $350,000. The Fourth Circuit reduced the fee by two-thirds, noting that the requested fee would have been "more than 100 times" the amount of the verdict, a disparity that "may well be unprecedented in this Circuit." *Id.* at 94. The plaintiff in *McAfee* similarly argued that the success was bolstered because the litigation was "reasonable and necessary to vindicate, for McAfee and other citizens of Virginia, a most important right secured by the Fourth Amendment." *Id.* The Fourth Circuit rejected this argument, reasoning that "[t]he jury's forbearance of a punitive damages award, however, reveals that deterrence and vindication may not be so important here." *Id.* Here, the jury found for Plaintiff on only one of her two theories of retaliatory treatment, and only awarded $2,000 in compensatory damages. (ECF No. 43). Accordingly, because of Plaintiff's lack of relative litigation success, and guided by the Fourth Circuit's reasoning in *McAfee*, the requested fee will be reduced by half.

**III. Conclusion**

For the foregoing reasons, the motion for attorney's fees filed by Plaintiff Jill Fordyce will be granted in part and

17

denied in part.  Judgment will be entered in favor of Plaintiff and against Defendant in the total amount of $69,567.75 for attorney's fees.  A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge